# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCEAN SW, INC., *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>CANAM PET TREATS, INC.<br><br>　　　　　　　　　　Defendant. | Case No. 14-cv-2059-BAS(KSC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER OR DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**[ECF No. 2]** |

On July 16, 2014, Plaintiffs Ocean SW, Inc. ("Ocean") and U.S. Pet Nutrition, LLC ("USPN") commenced this action in the San Diego Superior Court, asserting claims for breach of contract and unjust enrichment against Defendant CanAm Pet Treats, Inc. ("CanAm"). Thereafter, CanAm removed this action to federal court on the basis of diversity. CanAm now moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) or alternatively, to transfer to the Western District of Missouri. Ocean and USPN oppose.

//
//

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** CanAm's motion to dismiss for lack of personal jurisdiction and transfer venue.

## I. BACKGROUND[1]

CanAm is a Canadian company that "manufactures and distributes pet treats that are sold throughout Canada and the United States." (Connolly Decl. ¶ 2.) Its principal place of business and corporate offices are located in British Columbia, Canada, though it has a manufacturing facility that houses its United States corporate offices in Milan, Missouri. (*Id.*) According to Brian Connolly—CanAm's Chief Executive Officer—CanAm does not have any offices, facilities, or employees in California. (*Id.* ¶¶ 1, 3.) Ocean is a California corporation and USPN is a California limited liability company, each with their respective principal places of business in San Diego, California. (Compl. ¶¶ 3–4.)

The chain of events leading to this action began when Darford International, Inc. ("Darford" or "Darford International") went into receivership sometime in 2012. (*See* Chan Decl. ¶ 4; Connolly Decl. ¶ 4.) Darford was a Canadian company "in the business of manufacturing and distributing pet treats throughout North America." (Connolly Decl. ¶ 4.) Both Ocean and USPN were investors in Darford, and USPN was also a distributor for Darford in the United States. (*Id.*; Chan Decl. ¶ 4.)

However, Darford began "experiencing financial difficulties and went into receivership." (Connolly Decl. ¶ 5.) The receivership "occurred in British Columbia and was governed by the laws of British Columbia, with the receiver located in Vancouver, B.C." (*Id.*) Enter CanAm, a company that was "created to, and ultimately did, purchase certain of the assets of Darford as a part of a liquidation plan approved

---

[1] Ocean and USPN filed evidentiary objections to portions of and documents attached to the Connolly Declaration. The Court notes the objections, but **OVERRULES** them for the purposes of this order.

by the court in British Columbia." (*Id.*) As a part of the receivership and in connection with its purchase of Darford assets, CanAm—directly and through its wholly-owned subsidiary, Darford Holding Company, Inc. ("DHC" or "Darford Holding")—entered into several agreements with Ocean and USPN, including a distribution agreement with USPN, a sub-lease with USPN, and a promissory note with Ocean. (Connolly Decl. ¶ 6, Exs. 1–3.) These agreements were purportedly "all part of an overall agreement between CanAm (as the Darford asset purchaser) and USPN/Ocean SW (as the former distributor for and investors in Darford)." (Connolly Decl. ¶ 6.)

CanAm describes the distribution agreement as "stat[ing] that the parties were entering into the agreement in part because CanAm agreed to recognize prior indebtedness owed to Ocean SW by Darford[,]" and that they "agreed and understood that CanAm would be voluntary [sic] undertaking to repay a debt to Ocean SW that CanAm was not obligated to pay." (Connolly Decl. ¶ 7.) With that understanding, in October 2012, CanAm and Ocean entered into a promissory note requiring CanAm to repay Ocean in the amount of $1,050,000 plus interest by the maturity date. (*Id.*; Compl. ¶ 10; *see also* Connolly Decl. Ex. 2.) The promissory note states that it "shall be construed and enforceable under and in accordance with the laws of British Columbia and the laws of Canada applicable therein." (Connolly Decl. Ex. 2; *see also* Compl. ¶ 10.) CanAm used the proceeds from the note to "acquire all or substantially all of the assets of Darford . . . including the Darford brand name." (Chan Decl. ¶ 2.) Ocean and USPN allege that CanAm repudiated the note in June 2014, which was "accepted" in accordance with British of Columbia and Canadian laws. (Compl. ¶¶ 12–13.) Ocean and USPN allege that "[t]o date . . . CanAm has not repaid *any* principal or interest to Ocean on the USD $1,050,000 promissory note." (Compl. ¶¶ 11, 18 (emphasis added).)

//

//

//

CanAm also allegedly "agreed to repay debts owed to USPN . . . including those invoiced to or incurred by an entity called Darford, in exchange for good and valuable consideration." (Compl. ¶ 14.) CanAm purportedly "made repeated verbal and written agreements, assurances and affirmations to USPN in California that Canam would repay debts, including debts of both Darford International and Darford Holding, owed to USPN[.]" (Chan Decl. ¶ 3.) The debts owed to USPN allegedly include $519,165.86, $129,165.86, other debts and expenses, and interest." (Compl. ¶ 14.) Shue Wing Chan—a director for USPN and president of Ocean—adds that "John Phelps, an officer of USPN at the time, hosted conference calls with Canam regarding such repayments" and that Mr. Phelps "was acting in his official capacity as an officer for USPN" even though he was also a director for CanAm. (Chan Decl. ¶ 3.) Ocean and USPN allege that CanAm has not paid the outstanding debt owed to USPN.[2] (Compl. ¶¶ 16, 30.)

On July 16, 2014, Ocean and USPN commenced this action against CanAm in the San Diego Superior Court, asserting two claims for breach of contract and one for unjust enrichment. Because the complaint was not served on CanAm until August 5, 2014, CanAm removed this action to federal court on September 2, 2014. (Removal Notice ¶ 2.)

On October 6, 2014, CanAm commenced an action in the Western District of Missouri ("Missouri Action") against Ocean and USPN. (Related Case Notice 1:4–18.) The Missouri Action complaint indicates that CanAm is asserting breach-of-contract claims related to the "overall agreement" and distribution agreement previously mentioned. (Related Case Notice Ex. A.)

CanAm now moves to dismiss for lack of personal jurisdiction or alternatively, transfer venue to the Western District of Missouri. Ocean and USPN oppose.

---

[2] It is not entirely clear if the agreement allegedly breached by CanAm with respect to USPN is the distribution agreement, sublease agreement, employee-sharing arrangement, or some other agreement or collection of agreements. At the very least, it appears that the relevant USPN-CanAm agreements required CanAm to repay a certain sum of money to USPN, which allegedly remains unpaid.

## II. LEGAL STANDARD

When the parties dispute whether personal jurisdiction over a foreign defendant is proper, "the plaintiff bears the burden of establishing that jurisdiction exists." *Rios Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). In ruling on the motion, the "court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Bryton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009). "In determining whether the plaintiff has met this burden, the Court must take the allegations in the plaintiff's complaint as true and resolve the disputed jurisdictional facts in the plaintiff's favor." *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1158 (C.D. Cal. 2000) (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995)). A prima facie showing means that "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Unocal*, 248 F.3d at 922.

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Both the California and federal long-arm statutes require compliance with due-process requirements. *Daimler AG v. Bauman*, — U.S. —, 135 S. Ct. 746, 753 (2014); *see also* Fed. R. Civ. P. 4(k)(2); *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 150, 161 (9th Cir. 2007); *Pebble Beach*, 453 F.3d at 1155.

There are two types of personal jurisdiction: general and specific. *See Daimler AG*, 135 S. Ct. at 754-55. "Since *International Shoe*, 'specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role.'" *Daimler AG*, 134 S. Ct. at 755 (quoting *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, — U.S. —, 131 S. Ct. 2846, 2854 (2011)). General jurisdiction "enables a court to hear cases unrelated to the defendant's forum activities[.]" *Fields v. Sedgewick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). Specific jurisdiction allows the court to exercise jurisdiction over a defendant whose forum-related activities gave rise to the action before the court. *See Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

## III. DISCUSSION

CanAm contends this Court has neither general nor specific jurisdiction over it. (Def.'s Mot. 7:16–26.) Ocean and USPN respond that CanAm's contacts with California are sufficient to confer both general and specific jurisdiction. (Pls.' Opp'n 2:23–24, 7:18–27.)

Both parties submit additional materials to support their positions. CanAm submits the Connolly Declaration with its various exhibits, which include copies of the distribution agreement, promissory note, sublease agreement, master lease, and June 2014 repudiation letter. (ECF No. 2-2.) Ocean and USPN submit the Chan Declaration and various screen shots and print outs related to CanAm's purported business dealings in California. (ECF Nos. 4-2, 4-3.)

### A. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (citing *International Shoe Co v. Washington*, 326 U.S. 310, 317 (1945)). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG*, 134 S. Ct. at 760 (quoting *Goodyear*, 131 S. Ct. at 2853-54). "These bases afford plaintiffs recourse to at least one clear and certain forum in

which a corporate defendant may be sued on any and all claims." *Id.*

In assessing the substantiality of a defendant's contacts with a state, courts examine the "[l]ongevity, continuity, volume, [and] economic impact" of those contacts, as well as the defendant's "physical presence . . . and integration into the state's regulatory and economic markets." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011). A corporation's "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *International Shoe*, 326 U.S. at 318. "Although the placement of a product into the stream of commerce 'may bolster an affiliation germane to *specific* jurisdiction,' [the Supreme Court has] explained, such contacts 'do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Daimler AG*, 134 S. Ct. at 757 (citing *Goodyear*, 131 S. Ct. at 2857).

In support of their position that the Court may exercise general jurisdiction over CanAm, Ocean and USPN provide various facts that generally fall into three categories: (1) the marketing and sales of CanAm's pet-treat products in California; (2) the negotiations and execution of the promissory note; and (3) CanAm's parent-subsidiary relationship with DHC. None of these facts, individually or in combination, support exercising general jurisdiction over CanAm.

For the circumstances of this case, *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082 (9th Cir. 2000), and *Gator.Com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072 (9th Cir. 2003), are instructive. In *Bancroft*, the Ninth Circuit affirmed the lower court finding general jurisdiction lacking because the defendant's "contacts [did] not qualify as either substantial or continuous and systematic." *Bancroft*, 223 F.3d at 1086. The court identified numerous facts that supported its determination: the defendant was not registered or licensed to do business in California; it did not pay taxes or maintain bank accounts in California; the defendant did not target print, television, or radio advertising toward California; and its website was "passive," lacking the capability of

allowing consumers to purchase products. *Id.* The Ninth Circuit also recognized that the defendant's license agreements with two television networks and a "handful of California vendors" constituted "doing business with California, but [did] not constitute doing business in California." *Id.* (citing *Helicopertos Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 418 (1984)).

In contrast, *Gator.Com* presented a "close question" with respect to the presence of general jurisdiction. Though the defendant in *Gator.Com* lacked the traditional bases for general jurisdiction, the Ninth Circuit nonetheless found that general jurisdiction existed in light of the defendant's "extensive marketing and sales in California, its extensive contacts with California vendors, and the fact that . . . its website is clearly and deliberately structured to operate as a sophisticated virtual store in California." *Gator.Com*, 341 F.3d at 1078. Despite the fact that the defendant did not pay taxes or maintain an agent for the service of process in California, and its California sales amounted to 6 percent of the company's revenue, the factors favoring general jurisdiction included: selling "millions of dollars worth of products" in California; soliciting California residents directly through email; purchasing products from "numerous California vendors"; maintaining a "highly interactive" website through which California consumers made purchases and communicated with sales representatives; and conducting "national print and broadcasting marketing efforts" that encompassed California. *Id.* at 1074, 1078.

CanAm lacks the traditional hallmarks of being "at home" in California. It is neither incorporated nor registered as a business in California. Nor does CanAm claim California as its principal place of business. Furthermore, Ocean and USPN fail to present facts demonstrating a physical presence in California by CanAm, such as owning property, paying taxes, or maintaining bank accounts, beyond its affiliation to DHC. The only possible facts showing a physical presence appear to exist through third parties, such as distribution agreement with USPN and DHC's employee-sharing arrangement with USPN, but this is insufficient to establish CanAm's presence in

California. *See Dynamic Software Servs. v. Cyberbest Tech., Inc.*, No. C-13-04217, 2014 WL 3373924, at *5 (N.D. Cal. July 9, 2014). Further departing from the circumstances of *Gator.Com*, there are no facts presented that address CanAm's business volume or economic impact in California, or any solicitation of business from California residents beyond a passive website. *See Gator.Com*, 341 F.3d at 1078.

A point of emphasis also appears to be centered on CanAm's purported "interactive website directed to California customers." (Arouh Decl. ¶ 6, Ex. E.) Ocean and USPN demonstrate that there is some level of interaction between those accessing the website and the website operators, but the interaction appears to be limited to subscribing to emails and asking "questions about this list." (Arouh Decl. Ex. E.) Upon closer inspection, it appears that neither CanAm nor DHC directly sell to consumers in California. For example, in order to purchase CanAm's pet-treat products online, consumers are directed to Pet Best Inc. (Arouh Decl. Ex. C.) The screen shot of CanAm's website provides another example that CanAm does not directly sell or advertise to California consumers as there are no apparent links on the website screen shots to product purchases or online "shopping carts." (*See* Arouh Decl. Ex. B.) The evidence presented demonstrates that consumers must turn to third parties in order to purchase CanAm's pet-treat products.

There is no evidence before this Court of any print, television, or radio advertising directed at California. *See Bancroft*, 223 F.3d at 1086. Rather, the only marketing and selling "into" California appears to be through CanAm's website, www.darford.com. But the mere maintenance of an interactive website—which in this case is more passive than a sophisticated virtual store—is insufficient to support general jurisdiction over a foreign defendant, even if residents of the forum state visit the website and make purchases through it. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075-76 (9th Cir. 2011) ("If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, 'the eventual demise of all restrictions on the personal

jurisdiction of state courts' would be the inevitable result."); *Gator.Com*, 341 F.3d at 1078.

The negotiations and execution of the promissory note also fails to support finding general jurisdiction. Though Ocean and USPN mention the facts surrounding the negotiations and execution to support the argument that general jurisdiction exists, they fail to provide any explanation linking these facts to the requirements for general jurisdiction. Needless to say, the general facts related to actions leading up to the promissory note are neither continuous nor systematic, and they certainly do not render CanAm as essentially "at home" in California. *See Goodyear*, 131 S. Ct. at 2851. Though not argued, the same applies to the agreements with USPN, where the facts describing any negotiations are non-existent. *See id.*

Finally, Ocean and USPN present an agency theory that DHC's conduct may be imputed to CanAm. (Pls.' Opp'n 7:1–16.) In requesting jurisdictional discovery, Ocean and USPN implicitly concede that this theory is currently inadequate to make a prima facie showing supporting general jurisdiction. (*See id.*) "The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" *Unocal*, 248 F.3d at 928. The Court agrees with that concession that there are no facts presented satisfying the requirements of the agency theory. It is unclear what DHC activities in California amount to making it something more than a mere subsidiary of CanAm.[3]

In sum, even viewing disputed jurisdictional facts in favor of Ocean and USPN,

---

[3] It is worth noting that in *Daimler AG*, the Supreme Court criticized the Ninth Circuit agency theory's inquiry into "importance" as "stack[ing] the deck" in a manner that "will always yield a pro-jurisdiction answer," effectively "subject[ing] foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate[.]" *Daimler AG*, 134 S. Ct. at 759-60. The Supreme Court expressed concern that the outcome of this theory "would sweep beyond even the 'sprawling view of general jurisdiction' . . . rejected in *Goodyear*." *Id.* (citing *Goodyear*, 131 S. Ct. at 2856).

- 10 -

14cv2059

Case 4:15-cv-00354-BCW Document 10 Filed 05/07/15 Page 10 of 20

the Court finds that they fail to establish a prima facie showing that general jurisdiction over CanAm exists. The circumstances simply do not suggest that CanAm is "essentially at home" in California. *See Goodyear*, 131 S. Ct. at 2851.

### B. Specific Jurisdiction

The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Under the three-part inquiry, specific jurisdiction exists only if: (1) the out-of-state defendant purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the cause of action arose out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001).

The plaintiff bears the burden of satisfying the first two prongs of this specific-jurisdiction test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155.

Furthermore, "[s]pecific personal jurisdiction requires a showing of forum-related activities of the defendant that are related to the claim asserted." *Carpenter v. Sikorsky Aircraft Corp.*, — F. Supp. 3d —, 2015 WL 1893146, at *6 (C.D. Cal. 2015) (citing *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993)). It is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 131 S. Ct. at 2851 (internal quotation marks omitted).

//

"An out-of-state party does not purposefully avail itself of a forum merely by entering into a contract with a forum resident." *HK China Grp., Inc. v. Beijing United Auto & Motorcycle Mfg. Corp.*, 417 F. App'x 664, 665 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)); *see also Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) ("[T]he existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident."). "Rather, there must be actions by the defendant himself that create a 'substantial connection' with the forum State." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (internal quotation marks and emphasis omitted). Merely "random, fortuitous, or attenuated" contacts are not sufficient. *Burger King*, 471 U.S. at 475 (internal quotation marks omitted).

When the exercise of personal jurisdiction over a defendant is based on the execution or performance of a contract, the court must "use a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tip up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (internal quotation marks and citation omitted); *see also Schwarzenegger*, 374 F.3d at 802 ("The appropriate analysis for a suit 'sounding in contract' focuses on the presence of 'purposeful availment.'"). Accordingly, to determine whether a party to a contract has purposefully established the requisite minimum contacts with the forum, a court should look at four factors: (1) prior negotiations; (2) contemplated future consequences; (3) the terms of the contract; and (4) the parties' actual course of dealings. *Burger King*, 471 U.S. at 479. More specifically, "[t]o have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008); *see also Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).

//

Ocean and USPN identify eleven facts, some relevant and many not, that they contend support the proposition that CanAm purposefully availed itself to California. (Pls.' Opp'n 9:2–22.) The relevant facts identified include the parties to the agreements at issue, the purpose of the promissory note, and the correspondences between the parties prior to entering into the relevant agreements. But to keep perspective, it is important to emphasize that the claims asserted in this action relate to the breach of contractual agreements to *repay debts*. The debts allegedly owed to Ocean arise out of the promissory note; and the debts allegedly owed to USPN arise out of "verbal and written agreements," the terms of these agreements having not been disclosed in any detail to the Court. (Compl. ¶¶ 18, 28.) Consequently, the exercise of specific jurisdiction must derive from or connect with the breach of these agreements to repay debts. *See Goodyear*, 131 S. Ct. at 2851 ("[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'")

Ocean and USPN repeatedly mention the marketing and sales of CanAm's pet-treat products in California and other incidental agreements as considerations that contribute to the specific-jurisdiction analysis. (Pls.' Opp'n 9:2–22, 10:9–11:23.) However, the causes of action in this case do not derive from or connect with the marketing and sales of CanAm's pet-treat products or the other incidental agreements. The controversy in this case is CanAm's alleged failure to repay debts owed to Ocean through the promissory note and USPN through unspecified "written and verbal agreements." Neither party presents facts suggesting that CanAm's pet-treat products, which are apparently manufactured and distributed by the non-party subsidiary DHC, relate to the debts allegedly owed. In short, the marketing and sales of CanAm's pet-treat products in California and the other incidental agreements[4]—individually or

---

[4] For example, the distribution, sublease, and lease agreements submitted with the Connolly Declaration. (*See* Connolly Decl. Exs. 1, 3, 4.)

- 13 -

14cv2059

Case 4:15-cv-00354-BCW   Document 10   Filed 05/07/15   Page 13 of 20

through DHC—are not relevant to the specific-jurisdiction analysis within the boundaries of the causes of action asserted in this case to recover allegedly outstanding debts.[5] *See Goodyear*, 131 S. Ct. at 2851; *see also Holland*, 485 F.3d at 459 ("The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state."); *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989) (rejecting exercise of specific jurisdiction in instances where defendant's contacts are "attenuated" or are "based upon the unilateral activities of . . . third parties").

Turning to the relevant facts provided to the Court, it warrants repeating that the causes of action asserted are for the repayment of debts. (Compl. ¶ 10 ("CanAm agreed to repay Ocean the amount of USD $1,050,00[.]"); Compl. ¶ 14 ("CanAm also agreed to repay debts owed to USPN . . . including but not limited to $519,516.86, $129,165.86[.]").) A copy of the promissory note between Ocean and CanAm was provided (Connolly Decl. Ex. 2), but the terms of the agreements between USPN and CanAm beyond the repayment of debts have not been provided (Chan Decl. ¶ 3). There is no evidence as to who reached out to whom to initiate these contractual relationships. There is also no evidence where the contracts were signed or otherwise executed, though the promissory note does contain a choice-of-law provision requiring the application of British of Columbia and Canadian laws. (Connolly Decl. Ex. 2; Compl ¶ 10.)

Addressing the agreements between USPN and CanAm first, no facts are provided describing the prior negotiations, including where negotiations took place, leading to the formation of the "repeated verbal and written agreements, assurances and affirmations" or the parties' actual course of dealings. (*See* Chan Decl. ¶ 3.) The only

---

[5] Ocean and USPN may be asserting a "stream of commerce" theory to establish specific jurisdiction, but that theory applies to the "purposeful direction" test for claims sounding in tort. *See Picot*, 780 F.3d at 1212; *Holland*, 485 F.3d at 459. Because there are no claims sounding in tort asserted here, the Court rejects the stream-of-commerce theory insofar as Ocean and USPN assert it. *See id.*

term of the agreements known is that CanAm was allegedly obligated to repay debts in the amount of "$519,165.86, $129,165.86, plus other debts and expenses, plus interest." (*See* Compl. ¶ 14.) In fact, there is no evidence describing what consideration USPN received from CanAm in exchange for its promise to repay certain debts. Without knowing the terms of the agreements, it is difficult to determine what the contemplated future consequences were beyond the expectation that CanAm repay any debts allegedly owed. With respect to USPN, that only leaves the allegations CanAm entered into contracts with a California company, USPN, to repay certain debts.

The parties provide more information related to the promissory note, including a copy of the agreement itself. Prior negotiations between Ocean and CanAm included "telephone calls, computer meetings and/or emails." (Chan Decl. ¶ 2.) Though Ocean and USPN contend that these negotiations "occurred, at least, in part in California," that is not clear from the facts presented in the complaint and the supporting evidence submitted by the parties. (*See id.*) There is evidence, however, that the $1,050,000 loaned to CanAm was used to "acquire all or substantially all of the assets of Darford International, Inc. ("Darford International"), including the Darford brand name" (Chan Decl. ¶ 2), Darford having been "a company existing and organized under the laws of British Columbia, Canada" (Connolly Decl. ¶ 4). The promissory note itself does not contain a forum-selection clause, but it does contain a choice-of-law provision stating that the terms "shall be construed and enforceable under and in accordance with the laws of British Columbia and the laws of Canada applicable therein." (Connolly Decl. Ex. 2; *see also* Compl. ¶ 10.) To summarize, after negotiating over long distance, Ocean and CanAm entered into the promissory note so that CanAm could acquire assets of a Canadian company, Darford. The only continued contact with Ocean appears to have been the expectation that CanAm transmit the sum of money owed by the "maturity date." (Connolly Decl. Ex. 2.)

//

Ocean and USPN give the impression—whether intentionally or not—that there was an active, ongoing relationship with CanAm under the promissory note whereby CanAm transmitted payments to Ocean throughout the duration of 36 months. (Pls.' Opp'n 9:3–4.) But reading the complaint more closely, Ocean and USPN allege that "[t]o date . . . CanAm has not repaid *any* principal or interest to Ocean on the USD $1,050,000 promissory note." (Compl. ¶ 18 (emphasis added).) That allegation is consistent with the language in the promissory note, which states that "the Debtor [CanAm] shall repay the Principal Sum [of $1,050,000] and any accrued and unpaid interest before 2:00 p.m., pacific daylight time, on the Maturity Date." (Connolly Decl. Ex. 2; *see also* Compl. ¶ 10 ("CanAm agreed to pay Ocean . . . by the maturity date set forth in the promissory note.").) The maturity date was a single date specified by the parties set in October 2015. (Connolly Decl. Ex. 2; *see also* Compl. ¶ 10 ("The maturity date in the note is the date which is '36 months from the date of this Term Promissory Note.'").) CanAm was given the option to submit prepayments towards repaying the principal under the terms of the promissory note, but it apparently never exercised that right. (Connolly Decl. Ex. 2; Compl. ¶¶ 10, 18.) Based on the information before the Court, the only additional transaction under the promissory note was the expected transmission of the single payment from CanAm to Ocean by the maturity date. (*See* Connolly Decl. Ex. 2; Compl. ¶¶ 10, 18.)

The contracts at issue in this case—particularly, the promissory note—were "discrete encounters" without any ongoing obligations in California beyond repaying the debts allegedly owed. *See Azzarello v. Navagility*, No. C-08-2371, 2008 WL 4614667, at *3 (N.D. Cal. Oct. 16, 2008); *see also Boschetto*, 539 F.3d at 1017. With respect to the agreements with USPN, merely entering into contracts with a California company and awaiting a payment on the debts owed are insufficient to establish specific jurisdiction. *See Boschetto*, 539 F.3d at 1017 ("[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum."); *see also Burger King*, 471 U.S. at 478 (finding that an individual's contact with an out-of-state

party alone cannot automatically establish sufficient minimum contacts in the other party's home forum). It is important to highlight that no other facts, either through the complaint or supporting evidence, are provided regarding the agreements with USPN.

The promissory note with Ocean presents circumstances strikingly similar to those in *Azzarello*. In *Azzarello*, the court found that the defendant had not purposefully availed itself of conducting business in California, though it had received a $300,000 bridge loan from the plaintiff, a California resident, in response to an email solicitation. 2008 WL 4614667, at *1, *5. The loan was to be repaid in a "single balloon payment" equivalent to two times the principal investment. *Azzarello*, 2008 WL 4614667, at *1. The defendant had procured the loan to fund business operations in New York. *Id.* at *3. While the court found that the defendant's solicitation of the loan weighed in favor of finding purposeful availment, it reasoned that this fact alone was not sufficient to establish it. *Id.* The court likewise found that neither the defendant's knowledge that the plaintiff was based in California nor the fact that the defendant communicated via email with the plaintiff were sufficient to establish purposeful availment. *Id.* Instead, the court rested its holding on the fact that the transaction was a "discrete encounter," contemplating no further action by either party. *Id.* The court further reasoned that the contract would not have any effect in the forum state, given that the loan was intended to fund operations in New York, another fact that weighed against a finding of purposeful availment. *Id.*

Like *Azzarello*, CanAm entered into the promissory note with Ocean to procure capital to facilitate its acquisition of a Canadian company, Darford. Other similarities to *Azzarello* include the expected single payment to repay the debt as well as various long-distance communications prior to executing the loan agreement. The significant difference though is the defendant in *Azzarello* reached out and solicited the contractual relationship with the plaintiff, but there are no facts before this Court that CanAm initiated the contractual relationship with Ocean. *See Azzarello*, 2008 WL 4614667, at *1, *5. Furthermore, there are no facts suggesting the promissory note will have any

effect in California. *See id.* Comparing the *Azzarello* defendant to CanAm, the latter has fewer factors weighing in favor of finding purposeful availment. Consequently, applying much of the same reasoning from *Azzarello* to the circumstances of this case, CanAm did not purposefully avail itself of conducting business in California through the promissory note. *See id.*; *see also Fed. Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1443 (9th Cir. 1987) ("This circuit has recognized that the receipt of payment alone for services rendered outside the forum state is not sufficient to support personal jurisdiction.").

Each of the minimum-contacts factors either weigh against finding specific jurisdiction over CanAm, or Ocean and USPN fail to provide detailed facts to find otherwise. *See Burger King*, 471 U.S. at 479. Details regarding prior negotiations were not provided; stating there were "telephone calls, computer meetings and/or emails regarding the promissory note" is insufficient (*see* Chan Decl. ¶ 2). Beyond the expectation that CanAm would repay the debts allegedly owed, there are no details describing any other contemplated future consequences inside or outside of California. The terms of the promissory note exclusively establish a debtor-lender relationship, but include a choice-of-law provision indicating that British of Columbia and Canadian law apply to the contract; the terms of the agreements with USPN were not disclosed. Lastly, neither plaintiffs present details describing their course of dealings with CanAm that are relevant to the causes of action asserted in this case.

Accordingly, Ocean and USPN fail to establish a prima facie showing demonstrating that CanAm purposefully availed itself of the privilege of conducting activities in California and invoking the benefits and protections of California law. *See Schwarzenegger*, 374 F.3d at 802; *Myers*, 238 F.3d at 1072; *see also Burger King*, 471 U.S. at 479; *Boschetto*, 539 F.3d at 1016 ("[I]f the plaintiff fails at the first step [of the specific-jurisdiction analysis], the jurisdictional inquiry ends and the case must be dismissed.").

//

## C. Venue

"A district court has authority to transfer a case over which it lacks jurisdiction." *Carpenter*, 2015 WL 1893146, at *6 (citing 28 U.S.C. §§ 1404(a), 1406(a), 1631). Transfer is permitted "however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). A district court may transfer a case if: "(1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1140 (9th Cir. 2008); *see also* 28 U.S.C. § 1631 ("Transfer to cure want of jurisdiction"). "Thus, one requirement in approving transfer is a showing that the transferee court has jurisdiction over the action to be transferred." *Carpenter*, 2015 WL 1893146, at *6 (citing *Garcia de Rincon*, 539 F.3d at 1140).

Presuming this Court lacks jurisdiction, CanAm requests this case be transferred to the Western District of Missouri, where the parallel Missouri Action is currently pending. CanAm argues that it satisfies each requirement for the Court to properly transfer this case. (Def.'s Mot. 8:4–9:2.) Ocean and USPN respond that "there has been no showing that this action could have been brought in Missouri originally," focusing on the jurisdictional requirements of the venue-transfer analysis under 28 U.S.C. § 1631. (Pls.' Opp'n 17:17–18:26.) They do not address whether transfer would serve the interest of justice, effectively conceding that point. (*See id.*)

Based on the analysis above, this Court lacks personal jurisdiction over CanAm. And there is ample evidence before the Court that the Western District of Missouri would have been able to exercise its jurisdiction at the time this action was filed, particularly the fact that CanAm has a manufacturing facility in Milan, Missouri that also houses its corporate offices (Connolly Decl. ¶ 2) and the Western District of Missouri has already exercised jurisdiction in the parallel action brought by CanAm

against Ocean (ECF No. 9). The only remaining unresolved issue would have been whether transfer serves the interest of justice, but Ocean and USPN effectively concede that point. Therefore, the Court finds that transfer to the Western District of Missouri is appropriate. *See* 28 U.S.C. § 1631; *Garcia de Rincon*, 539 F.3d at 1140.

## IV.  CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** CanAm's motion to dismiss for lack of personal jurisdiction, and in lieu of dismissal, the Court **ORDERS** the Clerk of the Court to transfer this action to the Western District of Missouri to cure want of jurisdiction under 28 U.S.C. § 1631. (ECF No. 2.)

In exercising its discretion, the Court also **DENIES** Ocean and USPN's request for leave to conduct jurisdictional discovery primarily because they rely on speculation based mostly on what "Canam curiously has failed to allege." *See Boschetto*, 539 F.3d at 1020 (holding that district court did not abuse its discretion in denying request for discovery that was based on "little more than a hunch that it might yield jurisdictionally relevant facts"); *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (holding that district court did not abuse its discretion by refusing jurisdictional discovery where the plaintiffs "state only that they 'believe' that discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction").

**IT IS SO ORDERED.**

**DATED: May 7, 2015**

_____
**Hon. Cynthia Bashant
United States District Judge**